# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

ANN M. JACKSON,

    Plaintiff,                           CASE NO. 05-CV-10329

v.                                   DISTRICT JUDGE THOMAS LUDINGTON
                                       MAGISTRATE JUDGE CHARLES BINDER

RITE AID CORPORATION,

    Defendant.

_____/

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. 17)

## I. RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendant Rite Aid Corporation's Motion for Summary Judgment be **GRANTED**.

## II. REPORT

### A. Introduction

Pending, pursuant to an Order of Reference from United States District Judge David Lawson (Dkt. 3), is the above-entitled motion. The case was reassigned to United States District Judge Thomas L. Ludington on September 12, 2006, pursuant to Administrative Order 06-AO-027. (Dkt. 12.) Defendant filed the motion on January 19, 2007. (Dkt. 17.) Plaintiff responded on April 6, 2007 (Dkt. 22), and Defendant replied on April 20, 2007. (Dkt. 23.) After review of the documents, I conclude that pursuant to E.D. Mich. 7.1(e)(2), this motion is ready for Report and Recommendation without oral argument.

**B.     Facts**

Plaintiff avers that she began working for CVS Corporation in September 1997. (Compl., Dkt. 1 ¶ 8.) Plaintiff further avers that Rite Aid acquired CVS Corporation in February 2002. Defendant denies that averment, stating that Plaintiff has never been an employee of Rite Aid Corporation but rather that Plaintiff became an employee of PDSI Michigan in January of 2002, and then an employee of Rite Aid Services, LLC. (Dkt. 1 ¶ 9; Answer, Dkt. 7 ¶¶ 9, 10.)

Plaintiff was employed as a pharmacy technician at store number 4564 in Saginaw, Michigan. (Dkt. 1 ¶ 10.) Plaintiff's last day of work was November 4, 2002. Plaintiff contends that she "fell ill and was unable to come to work" in November 2002. (Dkt. 1 ¶ 12.) One week later, her doctor "told her to take another week off due to her illness, which at the time was undetermined." (Dkt. 1 ¶ 13.) When Plaintiff called her supervisor, Barbara McDonald, to notify her employer that she would not be coming into work that week, Plaintiff states that her supervisor responded, "I'm tired of this shit." (Dkt. 1 ¶ 14.) Plaintiff avers that she "then spoke with the Chief of Pharmacy, who told her that she would be placed on medical leave." (Dkt. 1 ¶ 15.) Plaintiff asserts that she "filled out the necessary documents for short-term disability" and was diagnosed with "walking pneumonia" in January 2003. (Dkt. 1 ¶¶ 16, 17.) When Plaintiff returned to work in February 2003, she was informed that she "had been terminated on December 27, 2002, for abandonment of her job." (Dkt. 1 ¶ 20.) Defendant does not dispute the date of her termination. (Dkt. 7 ¶ 20.)

Plaintiff avers that Defendant violated the Family and Medical Leave Act ("FMLA") (Count I),[1] retaliated against her for exercise of her FMLA rights (Count II), and failed to properly notify Plaintiff of her FMLA rights (Count III). Since Count III alleges a form of entitlement or

---

[1] Plaintiff denotes the three claims as causes of action but this Report will consider them counts.

interference theory (rather than retaliation), Counts I and III will be considered under the same section of this Report. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004) (noting that there are two theories for recovery under the FMLA: (1) the entitlement or interference theory arising from 29 U.S.C. § 2615(a)(1) and (2) the retaliation or discrimination theory arising from 29 U.S.C. § 2615(a)(2)).

Defendant avers that Plaintiff was not eligible for leave under the FMLA, that she did not qualify for leave under the FMLA, and that she did not have a serious health condition as defined under the FMLA. (Dkt. 7 ¶¶ 5, 8, 9, 10.)

**C.     Law and Analysis**

**1.     Motion Standard**

A motion for summary judgment will be granted under Rule 56(c) where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). In determining whether the moving party has met its considerable burden, a court may consider the plausibility of the moving party's evidence. *Matsushita*, 475 U.S. at 587-88. Summary judgment is also proper where the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326.

In response, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 191 L. Ed. 2d 202 (1986). Instead, the non-moving party has an obligation to present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339-40 (6th Cir. 1993). When the nonmoving party fails to adequately respond to a summary judgment motion, a district court is not required to search the record to determine whether genuine issues of material fact exist. *Street*, 886 F.2d at 1479-80. Instead, the court will rely upon the "facts presented and designated by the moving party." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992). The Sixth Circuit explicitly instructed that it is "utterly inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

After examining the evidence designated by the parties, the court then determines "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Booker v. Brown & Williamson Tobacco Co.,* 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). Summary judgment will not be granted "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

**2.    Discussion**

As indicated above, Plaintiff complains that Defendant violated the FMLA and failed to give Plaintiff notice of her rights under the FMLA (Counts I and III) and that Defendant retaliated against her for exercise of her FMLA rights (Count II). Defendant concedes that it is a covered employer but maintains that Plaintiff is not an eligible employee under 29 U.S.C. §§ 2611 and

2612. (Dkt. 17 at 8-10, 12-13.) Defendant also argues that Plaintiff's claims are barred by the statute of limitations. (Dkt. 17 at 10-11.)

    a.    **Eligibility under the FMLA**

In order for Plaintiff to be considered an eligible employee, she must have been employed by Defendant for twelve (12) months and have worked 1,250 hours during the twelve-month period preceding the beginning of the leave taken. 29 C.F.R. § 825.110(a). Defendant has brought forth evidence that Plaintiff worked a total of 1,090.9 hours while employed by Defendant from January 7, 2002, until November 4, 2002. (Dkt. 17, Ex. 1.) Plaintiff contends that this number is in error because her hours worked were not reflected in the "Kronos" timekeeping records until January 29, 2002. (Dkt. 22 at 4.) The documentation, however, shows that the 1,090.9 hours includes 52.5 hours Plaintiff worked between January 7, 2002, and January 29, 2002. (Dkt. 17, Ex. 1 ¶ 6.) Plaintiff questions the figure of 52.5 hours for a three-week period, noting that the records show that, in other three-week periods, she worked 107.1 hours or 93.3 hours. (Dkt. 17 at 5.) She argues that this difference creates a genuine issue of material fact that would prevent summary judgment. (*Id.*)

I suggest that Plaintiff's mere speculation on the number of hours she worked is insufficient to defeat Defendant's documentation, especially where, as here, the hours Plaintiff worked were never consistent. *See Hinson v. Tecumseh Products Co.*, 234 F.3d 1268, 2000 WL 1597947, *2 (6th Cir. Oct. 17, 2000) (unpublished) (holding that Plaintiff's conclusory allegation that, with overtime, she was over the number of hours needed to qualify for the FMLA, was insufficient to establish a genuine issue of material fact) (citing *Mitchell v. Toledo Hospital*, 964 F.2d 577, 568 (6th Cir. 1992)). Thus, I suggest it would be improper to substitute a speculative number of hours

for the figure gleaned from regularly-kept business records of Defendant.[2] *See Hinson, supra* ("since Hinson failed to provide the court with any evidence of the number of overtime hours worked or evidence to rebut Tecumseh's employment records to defeat a motion for summary judgment, the trial court's decision [granting summary judgment in favor of defendant] must be affirmed"). Even if Plaintiff had kept some type of parallel record of her hours, which she has not proffered, she would still have difficulty in arguing that a genuine issue of material fact exists. *See Woodford v. Community Action of Greene County*, 268 F.3d 51, 54 (2d Cir. 2001) (finding that it "strains credulity to claim that, on the one hand, [plaintiff] could not be bothered with accurately reporting her hours to her employer, yet, on the other hand, each night she assiduously made accurate records for her own personal reference").

Plaintiff next argues that she worked the 1,250 hours because she "was typically asked to remain at work by certain Pharmacists anywhere from one to three hours past her scheduled shift approximately two to three times per week [and that] [t]hese pharmacists paid Plaintiff 'off-the-books' when making such requests." (Dkt. 22 at 6.) Any hours spent working for "these pharmacists" would only be relevant to the extent that such employment was "joint employment." 29 C.F.R. § 825.106. However, any claim of joint employment suffers from the same evidentiary flaw as her other conclusory claims that lack support in the record. *Hinson, supra; Mitchell, supra*.

I further note that the instant case differs from other cases, such as *Kosakow v. Radiology Associates*, 274 F.3d 706 (2nd Cir. 2001),[3] where a plaintiff's scheduled work hours were the same each week, i.e., eight or nine to five each day, and where a plaintiff's job required him or her to

---

[2] I note that even if the 107.1 hour figure were used in place of the 52.5 hour figure, the total hours would be 1,145.5, which still falls short of the requisite 1,250 hours.

[3] In that case, Plaintiff arrived fifteen minutes early each day to prepare the office to be ready to serve walk-in patients when the office opened at 8 a.m..

prepare the office each day for a period of some minutes before opening the office. *See Mitchell v. King Packing Co.*, 350 U.S. 260, 76 S. Ct. 337, 100 L. Ed. 282 (1956) (including time spent sharpening knives each day before work under FLSA). In those cases, the extra minutes each day were regular, expected, necessary to and built in to the employment situation. On the other hand, any extra time spent at the workplace by Plaintiff was irregular and not expected or necessary to the daily performance of her job.

Finally, Plaintiff contends that she worked the threshold 1,250 hours because the time she worked for CVS should be added to the total hours since Rite Aid was a successor in interest to CVS. (Dkt. 22 at 6.) Even if Defendant were a successor in interest[4] to CVS and Plaintiff's hours worked for CVS, including training hours, were added to the 1,090.9 hours worked for Defendant, Plaintiff's total work hours between November 4, 2001, and November 4, 2002, would be 1,243.9 (1,090.9 + 153), just short of the requisite number of hours needed to be an eligible employee under the FMLA. (Dkt. 17, Ex. 3 at 10-16, Dep. of Edward Melton of CVS testifying to the total hours for which Plaintiff was compensated by CVS between November 4, 2001, and the end of January 2002.)[5] Accordingly, I suggest that summary judgment could be granted on this eligibility ground alone.

b.  **Statute of Limitations**

Plaintiff filed her complaint on December 23, 2005. Defendant argues that Plaintiff's claims are barred by the statute of limitations because her complaint was filed two years and 361

---

[4]As defined in 29 C.F.R. § 825.107.

[5]I calculated the total of 153 hours by adding the number of hours for which Plaintiff was compensated including training time. The individual figures added were: 13.1, 4.8, 2.2, 9.9, 6.5, 4.9, 14.8, 4.9, 15.3, 4.9, 10.3, 22.6, 9.5, 4.8, 15, 4.8, and 4.7.

days following her termination, which occurred on December 27, 2002, and over three years after her leave began on November 4, 2002. (Dkt. 17 at 10.)

The Family Medical Leave Act provides that "an action may be brought under this section not later than two years after the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(2). It further provides that, "in the case of such action brought for a wilful violation of § 2615 of this title, such action may be brought within three years of the date of the last event constituting the alleged violation for which such action is brought." 29 U.S.C. § 2617(c)(2).

Plaintiff concedes that she missed the two-year deadline but argues that her complaint was timely because her complaint sufficiently alleges a wilful violation that entitles her to utilize the three-year limitations period. (Dkt. 22 at 7-8.) Plaintiff asserts two factual grounds to support wilfulness on the part of Defendant: (1) that "defendant knew that as a carry-over employee, Plaintiff was entitled to FMLA leave," and (2) that her supervisor responded that she was "tired of this shit" when Plaintiff informed her supervisor that she would not be coming in to work the following week. (Dkt. 22 at 7.)

Wilfulness is not defined in the FMLA, but the Supreme Court standards used in connection with other statutes have been employed and require that a violation is wilful if the employer knew or should have known (or showed reckless disregard of the fact) that its conduct violated the relevant statute. *Hoffman v. Professional Med Team*, 394 F.3d 414, 419 (6th Cir. 2005) (citing *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 128-29, 105 S. Ct. 613, 83 L. Ed. 2d 523 (1985)). I suggest that Plaintiff has not and cannot come forward with facts sufficient to survive summary judgment on this issue. Here, Defendant fired Plaintiff for "abandonment" of her job

8

approximately two months after she left work[6] and before she was diagnosed with any condition,[7] let alone a serious health condition.

In addition, Defendant did not believe that Plaintiff was an eligible employee and I suggest that such a belief was not reckless. *See Hoffman*, 394 F.3d at 420 (affirming summary judgment on statute of limitations grounds where no wilfulness existed when employer erroneously read regulations as requiring that plaintiff take leave intermittently and terminated her when she did not); *Melvin v. Knoll, Inc.,* 21 Fed. App'x 305 (6th Cir. 2001) (affirming summary judgment on statute of limitation grounds where plaintiff filed suit within three but not two years and where plaintiff was frequently absent from work without excuse and was fired by defendant after missing two consecutive days from work despite fact that defendant did not provide any FMLA notice).

Therefore, I suggest that summary judgment could be granted on this statute of limitations ground alone as well.

    **c.**    **Interference or Entitlement Claim - Counts I and III**

To prevail on an interference claim under the FMLA, a plaintiff must show that: (1) she is an eligible employee; (2) the employer is a covered employer under the Act; (3) she was entitled to leave under the FMLA; (4) she gave the employer notice of her intention to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003). The employer's intent is not relevant to an interference or entitlement claim. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). However, plaintiffs seeking relief under the interference or entitlement section must prove that the employer's interference caused them harm. *Id.* Interference does not violate the Act if the

---

[6] Plaintiff left work on November 4, 2002, and was terminated on December 27, 2002. (Dkt. 1 ¶¶ 12, 20.)

[7] Plaintiff was diagnosed with walking pneumonia in January of 2003. (Dkt 1 ¶17.)

9

"employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct." *Id.* In addition,"'the mere fact of discharge *during* FMLA leave by no means demands an employer be held strictly liable for violating the FMLA's prohibition of interfering with an employee's FMLA rights.'" *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1051 (8th Cir. 2006) (quoting *Throneberry v. McGehee Desha County Hosp.*, 403 F.3d 972, 980 (8th Cir. 2005) (emphasis added in *Stallings*)). *Accord Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006).

The second element is conceded. As stated above, however, I suggest that the first element, that plaintiff is an eligible employee, has not been met. I further suggest that Plaintiff has not averred a condition that would entitle her to leave under the third element.

> For purposes of the FMLA, 'serious health condition' entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves: . . . (2) Continuing treatment by a health care provider . . . [which] includes . . . : (I) a period of incapacity (i.e., inability to work, attend school or perform regular other daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days and any subsequent treatment or period of incapacity relating to the same condition that also involves: (A) Treatment two or more times by a health care provider . . . or (B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114. In the instant case, Plaintiff alleges that in early November 2002, her doctor advised her to "take another week off due to her illness, which at the time was undetermined." (Dkt. 1 ¶ 13.) Plaintiff further avers that she was diagnosed with "walking pneumonia" in January 2003. (*Id.* ¶ 17.) It is questionable whether "walking pneumonia" could ever be considered a serious health condition since it is distinguished from pneumonia because of its lesser severity and the ability of the patient with the illness to carry on without need for bed rest or hospitalization.[8]

---

[8] *See* Edward Rosenow, M.D., *Walking Pneumonia: What does it mean?*, http://www.mayoclinic.com/health/walking-pneumonia/AN00137.

Even assuming that walking pneumonia could theoretically be serious, the instant Plaintiff has not averred or provided any evidence that her actual condition was serious. In between the time that Plaintiff was given the advice to take a week off from work and her ultimate diagnosis two months later, she has not alleged that she was given any medical advice to avoid work or that she was under any regimen of medical treatment. I suggest that such averments fall short of the definition of serious health condition. 29 C.F.R. § 825.114. *See also Murray v. Red Kap Industries*, 124 F.3d 695, 699 (5th Cir. 1997) (affirming summary judgment in favor of defendant finding that no serious health condition existed where plaintiff had a respiratory tract infection that was almost pneumonia but where she provided no medical information regarding her inability to work during the bulk of her absence but relied on her own statements that she could not come into work); *Brannon v. Osh Kosh B'Gosh, Inc.* 897 F. Supp. 1028, 1037 (M.D. Tenn. 1995) (holding that plaintiff's testimony that she was "too sick to work" was insufficient to show she was unable to return to work).

Assuming, *arguendo*, the other elements could be met, I suggest that Plaintiff cannot satisfy the fourth element. An employee is not entitled to FMLA leave due to unforeseeable illness unless he gives the employer notice of the need for leave "as soon as practicable under the facts and circumstances" and it "is expected that an employee will give notice to the employer within no more than one or two working days . . . except in extraordinary circumstances." 29 C.F.R. § 825.303(a) (unforeseeable leave).[9] Here, it is unclear whether Plaintiff ever provided notice of her intention to take FMLA leave. According to Plaintiff's own averments, she waited one week to inform her employer that she would be taking another week off of work for an "undetermined" illness, pursuant to a doctor's advice. (Dkt. 1 ¶ 13.) Since Plaintiff was ultimately diagnosed with

---

[9]Where the leave is foreseeable, the notice must be more detailed. 29 C.F.R. § 825.302.

"walking pneumonia," she was, at most, suffering from that condition at the time she left work. Thus, I suggest that Plaintiff was not suffering under the type of extraordinary circumstances that would relieve her from her duty to provide Defendant with notice of her intent to take FMLA leave within one or two days. 29 C.F.R. § 825.303(a); *Woods v. Daimler Chrysler Corp.*, 409 F.3d 984, 990-92 (8th Cir. 2005) (affirming summary judgment in favor of defendant because plaintiff failed to give the defendant adequate notice of his need for leave where he left work without informing defendant of his medical problem, had previously been warned about unauthorized absences, left voicemail messages regarding illness that plaintiff alleged indicated his need for leave, but where plaintiff failed to inform defendant when he would return, if at all, and stated that he wanted to have a "healthy and rewarding" role at the company, and where his doctor's letter said only that plaintiff should stay off work for a week); *Melvin, supra* (affirming summary judgment on statute of limitation grounds where plaintiff filed suit within three but not two years and where plaintiff was frequently absent from work without excuse and was fired by defendant after missing two consecutive days from work despite fact that defendant did not provide any FMLA notice).

I note that if Plaintiff's completion of short-term disability forms provided notice,[10] under the regulations, Defendant had a duty to notify her of her ineligibility to take FMLA leave within two business days of receiving her notice. 29 C.F.R § 825.110(d). However, I further note that Defendant's failure to do so would not bar or estop Defendant from claiming that Plaintiff is ineligible to take leave under the FMLA. *Rocha v. Sauder Woodworking Co.*, 221 F. Supp. 2d 818, 819-20 (N.D. Ohio 2002) (noting courts' unanimous disagreement with previous district court

---

[10]Plaintiff avers that the "Chief of Pharmacy" told her she "would be placed on medical leave," and that she "filled out" short-term disability documents sometime later. (Dkt. 1 ¶¶ 15, 16.)

case[11] which held that failure to comply with the regulation barred employers from challenging employee eligibility).

Accordingly, I suggest that even if Plaintiff were considered an eligible employee and even if her claims were timely, Plaintiff cannot establish a *prima facie* case of interference with a protected right under the FMLA.

### d. Retaliation - Count II

To establish a *prima facie* case of discrimination, specifically retaliation under the FMLA, Plaintiff must show that: (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the employee's protected activity and the employer's adverse employment action. *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990). Proximity in time can be indirect evidence of a causal connection between exercise of a right under the FMLA and the adverse employment decision. *Skrjanc v. Great Lakes Power Service Co.*, 272 F.3d 309, 314 (6th Cir. 2001). In addition, a request for leave is considered the exercise of a right under the FMLA. *Id.* at 314 ("The right to actually take twelve weeks of leave pursuant to the FMLA includes the right to declare an intention to take such leave in the future").

However, "[s]uch temporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual." *Id.* at 317. In other words, "temporal proximity alone will not support an inference of retaliatory discrimination when there is no other compelling evidence." *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). Plaintiff has not come forward with any evidence of pretext or

---

[11]*Miller v. Defiance Metal Products, Inc.*, 989 F. Supp. 945 (N.D. Ohio 1997).

13

discriminatory animus on the part of Defendant. Therefore, I suggest that temporal proximity is insufficient to show causation or to survive summary judgment.

I therefore suggest that Plaintiff has not met her burden to show that any genuine issue of material fact exists to support her claims under the FMLA, and thus suggest that summary judgment be granted to Defendant.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

           s/ *Charles E Binder*
           CHARLES E. BINDER
Dated: June 28, 2007            United States Magistrate Judge

## **CERTIFICATION**

      I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Scott Patterson, and on Ann Jackson by first class mail, and served on U.S. District Judge Ludington in the traditional manner.

Date: June 28, 2007                By     s/Patricia T. Morris
                                                    Law Clerk to Magistrate Judge Binder